IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
|  | * |  |
| BASILE BAUMANN PROST COLE & ASSOCS., INC, | * |  |
| Plaintiff, | * |  |
| v. | * | CIVIL NO.: WDQ-11-2478 |
| BBP & ASSOCS. LLC, *et al.*, | * |  |
| Defendants. | * |  |

* * * * * * * * * * * * *

MEMORANDUM OPINION

Basile Baumann Prost Cole & Associates, Inc. (the "Corporation") sued BBP & Associates LLC (the "LLC"), James Prost, and Ralph Basile (collectively, the "Defendants") for trademark infringement and other claims. For the following reasons, the Defendants' motion to exclude expert testimony will be granted in part and denied in part.

I. Background

The Corporation provides real estate development advisory services. Compl. ¶ 2. By 2009, Basile, Prost, and R. Thomas Cole owned all the Corporation's shares. *See* Answer ¶ 15.

On December 31, 2009, Basile, Prost, Cole, and the Corporation entered a Stock Redemption Agreement, whereby the Corporation agreed to redeem Basile and Prost's shares in exchange for $1.8 million and certain assets, including:

- 83 jobs,
- 138 "leads and proposals," and
- "[a]ll goodwill created on all past contracts and clients by Basile and Prost [within the last four years] to include but not be limited to any and all use of job qualifications and materials and job references for Basile and Prost's contracts and clients."

ECF No. 22-1, Ex. 2 at §§ 1, 2.1.1, 2.2.1, Schedule 2.2.1 (Revised). The Corporation "retain[ed] all [other] assets, properties[,] and rights," including the company name, office location and lease, telephone number, domain name and website, two-thirds of the Corporation's staff, and 70 percent of its contracts by revenue. *Id.* at § 2.2.1; Cole Decl. ¶ 44. A "Non-Competition" covenant provided that, for four years, Basile and Prost would not "in any manner . . . actively solicit business from any party who [wa]s currently a prospective client or ha[d] been, at any time during the four . . . years prior to the date of [the] Agreement, an active client . . . of . . . Cole and the Corporation." *Id.* at § 8.1.

On January 1, 2010, Basile and Prost formed the LLC, an "economics and real estate development advisory firm." Basile Decl. ¶ 8; Answer ¶¶ 6, 24.

On September 2, 2011, the Corporation sued, alleging that the Defendants had made misrepresentations and used a website,

domain name, logos, acronyms, and marketing materials confusingly similar to the Corporation's, in violation of the Lanham Act,[1] the Anticybersquatting Consumer Protection Act,[2] and Maryland common law. *See* Compl.

The Corporation hired Frank J. Walker, a certified accountant and valuation analyst, to provide a damages opinion. *See* ECF No. 33-6 at 21 [hereinafter Report]. The Corporation asked him to answer two questions:

> (1) What is the amount of damages attributable to [the Corporation's] loss of goodwill[3]?
>
> (2) What were [the LLC's] profits in 2010 and 2011?

Report 5.

Walker examined the LLC's income statements and determined that the LLC's profits were $555,159 in 2010, and $126,034 in 2011. Report 6. Walker noted that he had not been provided "detailed financial statements or other details." *Id.* 18.

Walker determined that the Corporation's loss of goodwill was $1.991 million. *Id.* at 16. In calculating the value of the

---

[1] 15 U.S.C. § 1125(a)(1)(A) & (B).

[2] 15 U.S.C. § 1125(d)(1).

[3] Goodwill is "the total of all the imponderable qualities that attract customers to [a] business." *Newark Morning Ledger Co. v. United States*, 507 U.S. 546, 556 (1993). "If . . . consumer satisfaction and preference is labeled 'good will,' then a trademark is the symbol by which the world can identify that good will." 1 *McCarthy on Trademarks and Unfair Competition* § 3:2 (4th ed.).

Corporation's lost goodwill, Walker treated goodwill as an intangible asset of the Corporation and applied the lost asset value theory. *See* Report 6-17; ECF No. 43 at 7-9; ECF No. 33-7 at 4-7 [hereinafter Rebuttal Report]. Walker valued the Corporation's goodwill by (1) starting with the consideration exchanged in the Stock Redemption Agreement ($1.8 million), (2) "subtracting the fair value of the net tangible assets transferred" ($272,907), and (3) "subtracting the fair value of Cole obtaining full control of the corporation" ($200,000). Report 16; Rebuttal Report 8. Walker opined that the remaining balance--$1.327 million--represented two-thirds of the Corporation's goodwill (Basile and Prost's share). *See id.* Accepting the Corporation's assertion that it lost all goodwill due to the Defendants' misconduct, Walker determined that the Corporation lost $1.991 million--Basile and Prost's share of the goodwill, plus Cole's equivalent share. *See* Report 5, 16.

Walker determined that the lost asset value theory "best fits the facts of this case" because (1) the Stock Redemption Agreement provided evidence of the fair market value of the Corporation's goodwill; (2) it produced a damages figure that was "certain and non-speculative" because the Stock Redemption Agreement was an "actual, arms-length, market transaction"; (3) the Corporation had alleged that it was never given--or had been

deprived of--its goodwill[4]; and (4) "the measure of loss to [the Corporation]" by not getting to use its goodwill "[wa]s the same as the measure of gain to the Defendants."[5] Rebuttal Report 5-6.

Walker opined that a diminution of value theory was inappropriate because the Corporation alleged "a failure of [the Defendants] to relinquish the goodwill that . . . was to be retained by [the Corporation]." Rebuttal Report 7. He further found that it was "not possible to compare before and after" valuations of goodwill, because "the 'before' scenario never really existed"; the Defendants' alleged wrongful conduct "began as soon as the redemption closed." *Id.*

On May 31, 2012, the Defendants moved to exclude Walker's damages testimony. ECF No. 33. On June 25, 2012, the Corporation timely opposed the motion. *See* ECF No. 43; ECF No. 39 (granting more time to file the opposition). On June 28, 2012, the Defendants filed a reply. ECF No. 44.

---

[4] Walker also noted that Basile had testified that the Corporation's name was known in the industry, "there's value to that," and he and Prost had given the Corporation its name in exchange for cash consideration. Rebuttal Report 6.

[5] Walker noted that "[s]tart-up companies rarely have goodwill when established," and "the economic benefit to a start-up company having instant goodwill in its formation stages . . . is enormous." Rebuttal Report 6. He reasoned that the amount the Corporation paid in the Stock Redemption Agreement to retain its goodwill was the same amount the Defendants stood to gain by using the Corporation's goodwill to obtain new business. *See id.*

II. Analysis

The Defendants have moved to exclude Walker's testimony under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

A. Rule 702 and *Daubert*

Under Rule 702, expert testimony is admissible if it will assist the trier of fact and is (1) "based on sufficient facts or data," and (2) "the product of reliable principles and methods," and (3) the principles and methods have been applied "reliably . . . to the facts of the case." Fed. R. Evid. 702. As the *Daubert* Court has explained, evidence is admissible under Rule 702 if "it rests on a reliable foundation and is relevant."[6] One aspect of relevance is whether the opinion is valid--that is, whether it "is sufficiently tied to the facts of the case."[7]

---

[6] *Daubert*, 509 U.S. at 597; *see also Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to "the testimony of engineers and other experts who are not scientists").

[7] *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985), *cited in Daubert*, 509 U.S. at 591. Equating "validity" with "fit," the *Daubert* Court explained that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92.

> 'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. The study of the phases of the moon, for example, may provide valid scientific 'knowledge' about whether a certain night was dark . . . However . . . , evidence that the moon was full on a certain night will

The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

Several factors may be relevant to the determination of reliability, including: (1) whether a theory or technique has been tested, (2) whether it has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory or technique is generally accepted within a relevant scientific community. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001). The factors are "neither definitive nor exhaustive, and some may be more pertinent than others depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Newman v. Motorola, Inc.*, 218 F. Supp. 2d 769, 773 (D. Md. 2002).

B. Walker's Testimony

The Defendants argue that Walker's goodwill opinion is inadmissible because it is (1) irrelevant, and (2) not the product of a reliable method. Mem. in Supp. of Mot. to Exclude 17-20. They contend that Walker's profit opinion is inadmissible because it is irrelevant. *Id.* at 20-22.

---

> not assist the trier of fact in determining whether an individual was unusually likely to have behaved irrationally on that night.

*Id.* at 591 (internal citations omitted).

1. Goodwill Opinion

a. Relevance

The Defendants argue that "Walker's goodwill opinion is irrelevant because there is no evidence of actual customer confusion." *See* Mem. in Supp. of Mot. to Exclude 17. They contend that actual damages are not recoverable absent confusion. *See id.*

The Corporation counters that the Lanham Act allows a plaintiff to recover "any damages sustained." ECF No. 43 at 5. It argues that "[p]roof of loss of goodwill--other than as manifested through loss of sales--is sufficient to prove damages."[8]

"[S]ubject to the principles of equity," a plaintiff who brings a successful Lanham Act claim is entitled "to recover (1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. 1117(a). "In general, however, the Lanham Act gives little guidance on

---

[8] ECF No. 43 at 6. The parties apparently disagree about whether lost profits or sales are necessary to show actual confusion. *See id.* at 5 ("Defendants . . . erroneously assume that a plaintiff must prove past lost profits to obtain a monetary award[.]"); ECF No. 44 (The Corporation's opposition fails to refute that damages are not recoverable absent actual confusion, and, "[f]or unknown reasons," argues that "recovery of damages . . . does not require proof of *lost profits*.") (emphasis in original). Because the Court will find that actual confusion is not a prerequisite to money damages, the Court need not resolve the parties' disagreement about what establishes actual confusion.

the equitable principles to be applied by a court in making an award of damages." *Synergistic Int'l, LLC v. Korman*, 470 F.3d 162, 174 (4th Cir. 2006). The Fourth Circuit has held that courts should consider six factors:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*Id.* at 175 (*quoting Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 349 (5th Cir. 2002)).

Although most circuits have conditioned monetary awards on proof of actual confusion,[9] the Fourth Circuit has not. *See Synergistic Int'l, LLC*, 470 F.3d at 174. The Fourth Circuit adopted its six-factor test from the Fifth Circuit, which has held that "actual confusion is not a necessary prerequisite to an award of money damages" under the Lanham Act.[10]

---

[9] "[I]njunctive relief is largely a matter of strict liability," but many courts find that "monetary relief should require 'something more.'" J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:58 (4th ed.). "[E]vidence of actual confusion of some customers or evidence of actual losses suffered by plaintiff will often supply the missing element[.]" *Id. See, e.g., Res. Developers, Inc. v. Statue of Liberty-Ellis Island Found., Inc.*, 926 F.2d 134, 139 (2d Cir. 1991); *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204-05 (7th Cir. 1990); *Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 525 (10th Cir. 1987).

[10] *See Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll.*, 550 F.3d 465, 490 (5th Cir. 2008). *See also Masters v. UHS of De., Inc.* 631 F.3d 464, 472-74 (8th Cir. 2011) (the

Because the Defendants have not shown that actual confusion is necessary to recover damages, they have not established that Walker's goodwill opinion is irrelevant--and inadmissible--on that basis.

b. Reliability of Walker's Method

The Defendants argue alternatively that Walker's goodwill opinion is inadmissible because it "is not the product of a reliable method." Mem. in Supp. of Mot. to Exclude 18. They contend that "loss of goodwill generally is not accurately compensable by monetary damages," *Id.* at 18-20 (internal quotation marks omitted), and "to determine whether a loss in the value of the goodwill has occurred, one must apply a two-step process, measuring the value of the goodwill before the alleged wrongful acts and after," ECF No. 44 at 7. The Defendants argue that Walker's use of the lost asset value theory is "beside the point," because there is no "clear evidence . . . that an entire identifiable asset ha[s] been lost." ECF No. 44 at 8.

The Corporation counters that, in using the lost asset value theory, Walker employed "an appropriate, if not preferred," method of determining the Corporation's damages.

---

general rule that "actual confusion entitles [a] plaintiff to damages . . . does not imply the converse: [that] a plaintiff cannot recover damages without a showing of actual confusion"; "requiring actual confusion would undermine the equitable nature of the Lanham Act's remedial scheme").

ECF No. 43 at 7. The Corporation argues that its lost goodwill--"the very asset that it purchased from [the] Defendants"—resulted from the Defendants' use of the asset, and Walker's methodology is appropriate because "there is evidence of an actual arms' length transaction in this case." *Id.* at 2. The Corporation further argues that a plaintiff need not establish damages with "mathematical certainty," and any "dispute over the choice of damages theory . . . must be decided by the trier of fact." *Id.* at 8-9.

As a preliminary matter, the Defendants apparently challenge the validity of Walker's methodology, not its reliability. "A test is 'reliable' if it is capable of being duplicated, and produces the same or substantially same results when successively performed under the same conditions."[11] "A test is 'valid' if it has a logical nexus with the issue to be determined in the case." *Samuel*, 96 F. Supp. 2d at 494. Validity is an aspect of relevance. *See Daubert*, 509 U.S. at 591 (*citing Downing*, 753 F.2d at 1242).

Here, the Defendants do not challenge that the lost asset value theory can be duplicated and will produce the same results in successive applications; rather, they challenge the propriety

---

[11] *Samuel v. Ford Motor Co.*, 96 F. Supp. 2d 491, 494 (D. Md. 2000) (*citing Daubert*, 509 U.S. at 595). *See also Daubert*, 509 U.S. at 593-94.

of applying this theory to calculate the loss in value of the Corporation's goodwill from the Defendants' alleged trademark infringement.[12] They argue that Walker has assumed a critical fact: "that an entire identifiable asset"--the Corporation's goodwill--"ha[s] been lost."[13]

"[I]t is not the district court's role under *Daubert* to evaluate the correctness of facts underlying an expert's testimony."[14] But "[a]n expert's opinion, where based on assumed facts, must find some support for those assumptions in the record."[15] An opinion is irrelevant when it assumes facts

---

[12] *See* ECF No. 44 at 10 (because "there is no evidence of a loss in the value of [the Corporation's] goodwill," "there is no basis for . . . Walker's purported application of a [l]ost [a]sset [t]heory").

[13] ECF No. 44 at 8. *See also* ECF No. 33-1 at 20 ("Walker made no effort whatsoever to determine, empirically, whether, in fact, there has been any . . . decline" in the value of the Corporation's goodwill.).

[14] *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) ("Questions about what facts are most relevant or reliable to calculating [damages] are for the jury.").

[15] *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). *See also Daubert*, 509 U.S. at 590 (an expert's opinion must be based on "more than subjective belief or unsupported speculation"); *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1080 n.4 (10th Cir. 2006) ("[I]t was not manifestly unreasonable for the district court to conclude that [an expert's] opinions lacked foundation because they were based on the self-serving statements of an interested party.") (internal quotation marks omitted); *Smith v. Equilon Enters., LLC*, Case No. JFM-03-0139, 2004 WL 1465783, at *1 (D. Md. June 29, 2004) (testimony did "not meet *Daubert* standards and therefore was inadmissible" when the expert had "assumed to be true the very

inconsistent with the record, because it lacks a "logical connection between the expert's theory and the facts of the case."[16] "However, mere weaknesses in the factual basis of an expert witness'[s] opinion bear on the weight of the evidence rather than on its admissibility." *McLean*, 224 F.3d at 801 (internal quotation marks omitted).

The Corporation has identified no evidence that it lost goodwill because of the Defendants' alleged misconduct. Walker's opinion relied only on the Corporation's allegations of lost goodwill. *See* Rebuttal Report 6. Walker also cited Basile's deposition testimony that he and Prost had given the Corporation its name in exchange for cash. *Id.* But this testimony does not establish that the Corporation lost goodwill after the parties executed the Stock Redemption Agreement. Walker assumed that fact without support.[17]

---

fact his expert opinion [was] necessary to establish").

[16] *Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 338 (4th Cir. 2007) (*citing Daubert*, 509 U.S. at 591).

[17] Because the Corporation has identified no evidence that it lost all its goodwill, this case differs from the "lost asset" cases cited in the Corporation's opposition. *See* ECF No. 43 at 7 (*citing Schonfeld v. Hilliard*, 218 F.3d 164, 176 (2d Cir. 2000), *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 825 (2d Cir. 1990), *and Bessemer Trust Co., N.A. v. Branin*, 544 F. Supp. 2d 385, 390 (S.D.N.Y. 2008)). In *Schonfeld*, the plaintiff had introduced third-party testimony that his company had lost its most valuable assets--supply agreements--when the defendant breached a contract. *See* 218 F.3d at 177-78. In *Sharma*, the issue was not whether a contract breach had resulted in lost

Accordingly, the motion to exclude Walker's goodwill testimony will be granted in part and denied in part. Because the Court is aware of no evidence that the Corporation lost goodwill, Walker may not testify about the value of the Corporation's goodwill allegedly lost because of the Defendants' actions. *See Daubert*, 509 U.S. at 590; *McLean*, 224 F.3d at 801. The Court will reconsider the admissibility of this aspect of Walker's testimony if the Corporation produces evidence of its lost goodwill. Absent such evidence, Walker may testify only about the value of the Corporation's goodwill as of December 31, 2009, an opinion that is supported by the Stock Redemption Agreement and Basile's testimony that he and Prost gave the Corporation its name in exchange for cash.[18]

2. Profits Opinion

In his second opinion, Walker calculated the LLC's profits for 2010 and 2011. *See* Report 6.

The Defendants argue that Walker's profit opinion is irrelevant because it is "based on 100 [percent] of [the] LLC's

---

assets (vessels), but rather, how to calculate the damages. *See* 916 F.2d at 825. Similarly, there was no dispute that the plaintiff investment firm in *Bessemer Trust Co., N.A.*, had lost an asset: the account of a client who had taken his business to another firm. *See* 544 F. Supp. 2d at 386-89.

[18] *See* Rebuttal Report 6. As with all evidence, however, the Corporation must show that testimony about the value of the goodwill on December 31, 2009, is relevant. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

revenues," and, thus, is "inconsistent with applicable law." Mem. in Supp. of Mot. to Exclude 20-21. The Defendants contend that Walker's opinion fails to exclude "profits earned from non-infringing sales and services" and "reasonable salaries" for Basile and Prost. *Id.* at 21.

The Corporation counters that the "Defendants' argument goes to the merits, not the admissibility, of Walker's opinion." ECF No. 43 at 9. It contends that the Defendants "did not pay themselves any salaries," and they bear the burden of proving any deductions. *Id.* at 9-10.

The asserted flaws in Walker's profits opinion are the proper subject of cross-examination. To be admissible, the expert testimony need not be "irrefutable or certainly correct."[19] "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[20] The issues the Defendants raise are straightforward, and, with the aid of cross-

---

[19] *United States v. Moreland*, 437 F.3d 424, 431 (4th Cir. 2006), *abrogated on other grounds, as recognized by United States v. Evans*, 526 F.3d 155, 165 (4th Cir. 2008).

[20] *Daubert*, 509 U.S. at 596. *See also Meterlogic Inc. v. KLT, Inc.*, 368 F.3d 1017, 1019 (8th Cir. 2004) ("The district court must exclude expert testimony if it is so fundamentally unreliable that it can offer no assistance to the jury, otherwise, the factual basis of the testimony goes to the weight of the evidence.").

examination and the Defendants' expert witness, a jury can determine whether the asserted deficiencies undermine Walker's opinion. Accordingly, the Court will deny the motion to exclude Walker's profits opinion.

III. Conclusion

For the reasons stated above, the Defendants' motion to exclude expert testimony will be granted in part and denied in part.

7/25/12
Date

William D. Quarles, Jr.
United States District Judge